In over a quarter century of being an appellate public defender, I have never argued a case that the district court was wrong on a credibility finding. But I think the Supreme Court's opinion in Miller L. last year reminds us that a district court's credibility finding is not insulated from review. The standard's a high standard, which is clearly erroneous, and it presumes that there's evidence to support the finding, but requires the reviewing court to look at the entire record to determine whether they have a definite and firm conviction that a mistake has been made. I've tried to parse that, and maybe you can help me with these photographs, but part of my problem is I read the transcript and then try and match them against the transcript. It does seem the court very carefully looked at what evidence was being proffered, and I'm trying to understand exactly what these pictures are supposed to tell us, because I look at the shot there. First of all, the court seemed troubled by the shots from the driver's side, and the argument seemed to focus on the shots into the car from the passenger side, correct? That's what we're looking at. That's what these pictures are, that most of these pictures are from the passenger side. Correct. So what is it that we're supposed to infer from looking at Exhibit 3, which has two shots looking over the fellow's knee, which allows you to see into the seat? You can just barely see what I guess is the seat adjustment lever that's depicted later on in the photographs of the mechanics of the seat, and I understand what we're seeing looking under the seat is supposedly, I guess, there's a little ridge or thing that's built in. So tell us what we're supposed to derive from these photos, because that seems to be the crux. You're saying that the officers Well, I'm not sure it's the crux. Well, you're saying the officer, that's what was being argued to the court, the district court. They're lying because they can't, the physical evidence just can't, it couldn't have been seen. The butt of the gun couldn't have been seen. It had to be either all out or all in. I will address that in just one second. I'd just like to point out, though, that although that is an important factor in the argument about whether the officers should be credited or not, it is not by any stretch the full argument of that. Well, I understand you're making arguments about the pretextual stop. What's the rest of it? Well, not just the pretextual stop. Tell us what it is. But, you know, the photographs are what you're saying is the objective evidence as much as you can get. So if you can't explain the photographs, your uphill battle is even higher, as far as I'm concerned. Several of the photographs are from the passenger side. Some of them are from the driver's side. The reason that there are photographs taken from the passenger side is both of these officers testify that they saw the gun when Mr. Artiaga got out of the car. And so it becomes relevant to see whether it could have been seen from either the passenger side or the driver's side. The photographs are taken from the point of view or the investigator who took the photographs was testifying in the argument that they were taken from the point of view according to where the officers said that they were standing. And there was a fair amount of testimony about that, especially when the door was open. To what side did he move in order to allow the door to be open? And eventually what the officer said is that he moved to the back of the door so that the door opened in front of him. And that's what these, if you look at Exhibit 5, that's the view of that. He would be behind the door. And so that's why I think those photographs, the other photographs behind the doors, if I step, if the door opens out, I'm on the functional side of the outside of the door so that the person's getting out to my left if we're looking at the passenger side. If I'm on the passenger side and the door opens and I'm the police officer and the guy's getting out. This is the driver's side we're talking about. Okay, so the door swings toward the front of the car. Right. Okay, and the officer's standing on the outside of the door or in the well? The testimony in the beginning was very confusing. I know, but what were you just saying? As it was cleared up, what the officer said is that he stood to the rear of the car. He backed up towards the rear of the car so that the door could open in front of him. So he's looking at an angle into the car. Right, which is the angle that... So if the driver were still sitting there, he'd be looking over the left shoulder of the driver down Right, although he also says... Now he's out. Well, he also says that Mr. Arkeaga got out and Mr. Arkeaga's body was between him and the inside of the car. Got it. And so I think that's what these photographs are supposed to be. But I'd like to spend just a minute going over some of the other evidence and why we think that that makes the officer's testimony incredible. The deputies are working gang suppression. What's important about that is they specifically testify that what that means is that they do not respond to other non-gang-related activities, which presumably would include a traffic stop, that they don't respond to that. They responded to this one because they were ganged. They were identified as gang members, and that's why the officer responded to them. They say it was for a traffic violation, but not only would that have been outside what they testify is their gang suppression task, but there's nothing about this shot that looks like a traffic violation. He does not ask for... Time out. What do we have going on here? I'm not quite sure. I'm not sure. It's nothing to do with our system here. Oh, okay. Fine. Go ahead. He does not ask for a driver's license for registration. Time again. It's not me. No, it's not you. What does that, what does that go to? To pretext or something else? What you're just explaining. I think it goes to whether the officers are telling the truth. Was it really an illegal right turn? In other words, are you saying they lied as to the reason for making the stop, that there was no traffic infraction? I don't think it's necessary to resolve that issue. I don't know. Well, but what it does, if you want to say, you know, if it goes to credibility because you're saying they're lying, right? Well, they don't have to be lying about every single thing they said. In fact, that was... No, but you're saying they're lying about the reason for the stop. Is that what you're saying? No, what I'm saying. Well, then what does it go to? Assuming, you know, your inference is the correct one. What it goes to is the context of this stop shows that what it is is a stop to look for gang activity. Okay, let's accept that. Okay, now what? Well, that goes directly to when they saw a gun. What this looks like, if you take this as a whole, they say they stopped for a traffic violation, which, according to their testimony, immediately turned into an alcohol stop, which, again, according to their testimony, was immediately resolved. You know, counsel, you're asking us to overturn the credibility finding. You put in objective evidence of photographs to show, to impeach what they could see. Are you walking away from the photographs? Absolutely. Well, then would you please answer my question at the beginning, is what are these showing? What these photographs show are two things, and especially when you said it was the evidence of basketball. I understand. I've read your briefs. I've read the transcripts. I want to find out what I can't understand. That's the reason for arguing is to answer my question. What they show is the officer here. Okay, so my question is, I read the transcript, and the court is looking at the same photograph and saying, I don't think they prove your case. Okay, now that's taken out some of your so-called, or I'm calling it, objective evidence. So please explain to me why the court got it wrong there. Do these photographs have any evidentiary weight in support of you? And if so, what? They have some evidentiary weight in support of the argument. What is it? They show is the point of view that each of the officers had as Mr. Archiaga got out of the car. Okay. Where they say the gun was placed. Difficult is not impossible to see. In addition to that, it shows the point of view. How can I tell that from looking? What in your, tell me in any of these photographs, what shows that? Why, there's no gun shown in these one way or the other. So I don't know what the photographs are supposed to tell me. How can I look at this? I can see, I can see on Exhibit 3, I can see the leading edge of the driver's side seat adjustment mechanism. So what is it about this photograph that just proves that if the gun was lying completely on the floor mat side of the front seat. On the other side of the hump. Yes, on the forward side of the hump. Okay. Why from the visibility that's depicted in Exhibit 3, it wouldn't appear to the officer just to be the butt of the gun. I think all the photographs have to be taken together because with the partition, that would not, the gun wouldn't have protruded that way. And what the photographs show of the earlier photographs, 3 and 5, that Your Honor is referring to, show that that would have all, that part where the partition would have blocked it, would have been all they could have seen. Or Officer Yamasaki could have seen. I don't see, I don't, unlike the district court, I don't see how, I can't on the face of these photographs make that conclusion. You tell me that's that, but I can't figure out why that's the case. Well, you can answer that question if you have it. Well, I answered the best I can. I understand the court has been satisfied with that. So what you're relying on is then just the circumstantial evidence that their assignment and the alcohol and that they didn't look for, they didn't act as if they had seen guns. That's all the totality that you're looking at that we should rely upon. Yes. Okay. Thank you. Good morning. I may have pleased the Court. Bian Su Kim from the United States. Judge Fischer, let me address the question that you had about the photographs and what the defense's argument was in the district court. The argument of the defendant in the district court was twofold. Number one, the gun was behind a partition that divided the floorboard from a hump behind the partition, and the gun was completely hidden behind that partition. That's number one. I understand that. Number two. And then the officer's testimony is that they both say they saw the butt of the gun. And the photographs are supposed to establish that if they could view anything, it would be the entirety of the gun, not just the butt. Okay. And I was trying to find out how that is established one way or the other by these photographs. And our position, Your Honor, is that the photographs don't establish that the officers could not have seen exactly what they saw, which was only the butt of the handgun. And let me just explain that by referencing the actual pictures that are in the record before you. And I'd like to direct the Court first to Excerpts of Record, page 150. This is Exhibit No. 6 in the district court, and this is one of the few photographs that are taken from the driver's side. And if you notice from the top picture, which shows the front seat, the angle of the photograph is taken as if the camera is a little bit in front of the seat. The testimony in the district court was that the officers did not have that view when they saw the gun. Rather, they're standing, as Judge Fischer, you put it, as if the passenger or the driver were there over the driver's left-hand shoulder. In other words, to the right of the seat and a little bit in back of the seat. About the center point between the two doors is what you're saying. About the center point between the two doors. And from that perspective, it is entirely consistent with the photographs and makes complete sense that they would not have been able to see the entire handgun, but just the butt of the handgun. So that's the picture with respect to the driver's side. And that's the reasoning of the district court in finding that the photographs were not dispositive of the credibility of the officers. Now, you can go through the exact same analysis, essentially, Your Honor, with respect to the defendant's exhibits 2, 3, and 4. Well, 4 was the one that I was trying to interpret because that seemed to be closest to what I then understood the angle of the officer to be. And the top picture on 4, which is AR-148, you can see from the passenger side into the driver's side, you can see the floor mat all up to what appears to be, am I correct that that's one of these bar lever seat adjustment mechanisms? Yes, Your Honor. So you can see the glint of that in the photo, and that it appears that the floor mat abuts just under the edge of the seat there. So I assume that from these other pictures is where this ridge or partition begins. So is it your interpretation and argument that if the gun were sitting on the outside, that is the floor mat side or the forward side of the partition, that only the butt would be visible or could physically, as opposed to be straddling over the partition, as they argued? Essentially, Your Honor. And let me just focus that a little bit, if I may. If you flip two pages forward to page 150 of the excerpts of record, that's the best view that we have of that metal bar that you're referring to. To where? 150? Go ahead. And from 150, it's not entirely clear to me that the partition actually starts where the bar is or if the partition is actually below the metal bar and in back of it. Well, I assume the bar is stationary. Well, the bar is stationary. I'm sorry. The partition is stationary and the seat moves forward or back so that the partition is presumably not tied to the location of the bar. That's true. But in this photograph, I guess, my only point is that in this particular photograph, 150, the bottom photograph, the partition seems to be behind the bar, so that the bar and the partition aren't. Well, I'm assuming that just from the way seats and cars are constructed. That I can figure out. But now if we go to page 148, Your Honor, of the excerpts of record and the photograph that you were looking at, of the gun, my only point is could have been underneath the metal bar that you see. Yeah. And then even from this angle that the photograph is taken from, you might only see the butt. But it's not clear that this is the exact angle of Officer Yamasaki when he sees the gun. And the other thing with respect to Defendant Exhibit No. 4 that the district court talks about is that this photograph is taken from a tripod that's five feet from the ground, and the testimony in the record is that Officer Yamasaki is five feet seven, or whatever that's worth. There isn't precise testimony about exactly where Officer Yamasaki is standing, but even assuming that he's standing exactly where the camera is in excerpts of record, it's still possible, of course, that he could only have seen the butt of the gun. Your Honor, with respect to, unless you have any questions further about the photographs, with respect to the pretext, I would only want to clarify that the record is bereft of any notion that the officers were or could only enforce gang-related, you know, do gang-related law enforcement. And that, you know, they were limited to that. The point is that was their job. Their duty was gang suppression, right? So why would the question is why would, you know, deputies assigned to that function be looking around for traffic violations? Well, I think it's because they were driving on Century Boulevard when the car in front of them brakes suddenly in order to avoid hitting a car that has made an illegal right-hand turn. When the officers, regardless of what unit they've been assigned to, see an obvious traffic violation that almost imperils themselves, I think that it's reasonable to assume that they're going to do something about it. Well, I'll take some judicial notice. I haven't seen that behavior on the part of LAPD and anywhere I've been around the way that people speed through red lights in front of them, and they don't seem to do much. Thank you. I'll give you a minute for – okay, fine. All right. The case just argued is submitted. Thank you.
judges: Tashima, Fisher. Shadur